IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

JAMES E. GRANT,

                              Petitioner,

            Vs.                                   No.   10-3172-SAC

STATE OF KANSAS, et al.,

                              Respondents.


MEMORANDUM AND ORDER

        The pro se petitioner, James E. Grant,  seeks federal habeas

relief from his state court convictions for aggravated arson pursuant to 28

U.S.C. § 2254.  (Dks. 1 and 7).  He argues that the state district court erred

in allowing a witness's preliminary hearing testimony to be read at trial and

that the state presented insufficient evidence to sustain his conviction of

aggravated arson on November 24, 2006.  Respondents answer opposing

relief on these arguments. (Dk. 18).  After reviewing the filings and the state

court record, the court denies the § 2254 petition.

        Mr. Grant was arrested and charged in the District Court of

Wyandotte County, Kansas, with three counts of aggravated arson of a

dwelling at 2923 N. 27th Street, Kansas City, Kansas, on November 25,

2006, in violation of K.S.A. 21-3719.  Before trial, the State moved to have

the witness, John M. Jones, declared unavailable and to allow the use of his

preliminary hearing testimony.  Finding that the State had exercised due

diligence in attempting to locate Mr. Jones and that this effort was not "anything short of good faith," the district court granted the State's motion. (State Court Rec., Vol. IV, p. 35).  Jones' preliminary hearing testimony was read to the jury who later convicted Grant on all three counts of aggravated arson.  Grant sought a new trial arguing the State did not use due diligence in trying to locate Jones and challenging the evidence as insufficient to sustain the convictions.  The district court denied the new trial motion and sentenced the defendant to 102 months' incarceration on count one and 59 months on each of the remaining two counts.  The sentences on the latter counts ran concurrently to each other but consecutively to the first count for a controlling sentence of 161 months' incarceration.

Grant appealed.  He claimed the district court erred in declaring Jones unavailable on the evidence presented by the State.  As the Kansas Court of Appeals noted, Grant did "not challenge testimony on the grounds that he was unable to confront Jones, or that the State's demonstration of unavailability failed to fit within one of the requirements in K.S.A. 60-459(g)." *State v. Grant*, 208 P.3d 361, 2009 WL 1591396 at *2 (Kan. App. Jun. 5, 2009), *rev. denied,* 290 Kan. --- (May 18, 2010).  The Court of Appeals concluded that the district court had not abused its discretion in finding the State had exercised due diligence in trying to locate Jones and that any assumed error in admitting Jones' preliminary hearing testimony

was harmless as Grant had the opportunity to cross-examine Jones during the preliminary hearing.

Grant's other issue on direct appeal challenged the sufficiency of the evidence to support his aggravated arson conviction on count one that charged the first fire started before midnight on November 24, 2006.  He argued the State failed to produce substantial evidence to prove the element of a substantial risk of bodily harm.  While finding in the defendant's favor that the State's evidence did not sustain this element, the Court of Appeals found the evidence sufficient for the lesser-included offense at K.S.A. 21-3719(a)(2).  Instead of reversing the conviction, the sentence on count one was vacated and the case was remanded for resentencing on count one as a less-severe felony.  The state court record shows the district court in January of 2010 resentenced the defendant such that he received the same total prison term of 161 months.

Grant filed his initial petition for writ of habeas corpus on August 26, 2010.  (Dk. 1).  To assist in understanding the substance of Grant's claims and to determine if his claims were fully exhausted in state court, the court directed Grant to submit his petition on forms provided by the court and to answer every applicable question. (Dk. 5).  Grant timely filed his petition.  (Dk. 7).  The court directed the State to file a response to this petition (Dk. 9), and the State filed its answer "admit[ting] that petitioner

[had] exhausted his available state court remedies." (Dk. 18, p. 2). The State's answer addresses the merits of Grant's two claims arguing that the state court decisions at issue are not contrary to or involve the unreasonable application of federal law and are not an unreasonable determination of the facts from the evidence presented. Grant has not filed any traverse.

**SUMMARY OF TRIAL EVIDENCE**

Grant does not contest the facts as appearing in the Court of Appeals' decision. *State v Grant*, 2009 WL 1591396 at *1-*2. For ease of reference and understanding, the court briefly restates them here.

While visiting the rental home of longtime friends and acquaintances, Annie Turner and Roosevelt Neal, in the evening hours of November 24, 2006, Grant began arguing and fighting with Charlie Jackson, another visitor. At Turner's request, Grant left briefly only to return and start arguing with another occupant, John Jones, Turner's nephew. After being struck with a board, Grant left the house and, according to Jones, Grant said he would be back and would burn them out.

Around midnight, Grant rang the door bell and told Jones, who did not open the door, that the house was on fire. Turner testified she heard Grant say, "the basement is on fire" and "I guess you must want to die tonight." Turner also heard the sound of breaking glass. They found the basement window broken and the fabric covering the window on fire. Jones

put out the fire while Neal called the fire department.  Turner testified she told the officers at the scene that she expected Grant to return for his jacket which he had left on the porch.  This testimony relates to count one.

As expected, Grant returned, rang the door bell, and asked that Turner let him in.  When she refused, Grant began breaking windows on the first floor of the residence, so the police were called.  After seeing Grant in the back yard and then following Grant's voice as he walked around the house, Jones next saw Grant standing outside of Neal's bedroom and using a cigarette lighter ignite the blanket hanging over Neal's window.  These facts relate to count two.

The second fire investigation was completed, and the occupants remained in the residence.  Awakened to black smoke, Jones and his family vacated the house.  Jones testified he did not see who started the third fire but around the time of the fire he did see Grant in the back yard running away with a container.  Turner testified that during the third fire she heard Grant say from the porch that the house was on fire and that upon looking outside she saw Grant leaving and heard Grant challenge whether they could put out that fire.  After this investigation, the occupants left the house.  This relates to count three.

**STANDARD OF REVIEW**

A federal court may not grant relief on a state inmate's habeas

corpus claim adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or unless the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2).  As construed by the United States Supreme Court, a state decision is "contrary to" established precedent if it "arrives at a conclusion opposite to that reached by this Court on a question of law of if the state court decides a case differently than this Court has on a set of materially indistinguishable set of facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  The "unreasonable application" clause has been construed to afford relief when "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  Applying the above standards requires the court first to "assess whether there is clearly established federal law, as set forth in the holdings of the Supreme Court."  *Smith v. Workman*, 550 F.3d 1258, 1264 n.2 (10th Cir. 2008) (citation omitted), *cert. denied,* 130 S. Ct. 238 (2009).  "State court determinations of fact shall be presumed to be correct unless the presumption is rebutted by clear and convincing evidence."  *Smith v. Workman*, 550 F.3d at 1265 (internal quotation marks and citations omitted omitted).

6

**ADMISSIBILITY OF JONES' PRELIMINARY HEARING TESTIMONY**

In his petition filed in response to the court's order, Grant argues error in admitting this testimony as the State failed to find Jones when just two months later Jones was jailed for failure to pay child support, as Jones is "known in the community" and in his family to be deceptive, and as Grant was unable to cross-examine him at trial over "discrepancies in his testimony." (Dk. 7, p. 5). Grant does not cite any authorities for his argument but asserts this issue was raised on direct appeal. *Id.* On appeal, Grant cited only Kansas law in arguing the State failed to prove due diligence in its efforts to locate and present Jones for trial. The Kansas Court of Appeals affirmed relying exclusively on Kansas law. Nonetheless, the court will treat Grant's contention as alleging a violation of the Sixth Amendment Confrontation Clause. Being plainly "testimonial" hearsay, Jones' testimony  is not admissible under the Sixth Amendment unless Jones was shown to be unavailable and Grant had a prior opportunity to cross-examine Jones. *Crawford v. Washington*, 541 U.S. 36, 54, 68 (2004). Because there is no question nor dispute on the record that Grant's trial counsel fully exercised the opportunity to cross-examine Jones at the preliminary hearing, Grant's only constitutional argument is with whether Jones was unavailable.

Even though the Kansas Court of Appeals did not cite nor discuss

any federal Confrontation Clause precedent, the court is still required to give

deference under § 2254(d) to the appellate court decision and to look "to the

court's reasoning and result." *Flournoy v. McKune*, 266 Fed. Appx. 753,

757, 2008 WL 467015 at *3 (10th Cir. 2008).  Following *Cook v. McKune*,

323 F.3d 825 (10th Cir. 2003), the court will apply the deferential standard

despite the state appellate court's failure to cite federal precedent.  The law

relevant to this issue was fairly and fully stated in *Flournoy*:

> Under *Ohio v. Roberts*, 448 U.S. 56, 74, 100 S.Ct. 2531, 65 L.Ed.2d
> 597 (1980), *overruled on other grounds by Crawford v. Washington*,
> 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), a witness is not
> unavailable unless the prosecution has made a good-faith effort to
> obtain her attendance at trial. Whether the government has made a
> good-faith effort is "a question of reasonableness." *Cook*, 323 F.3d at
> 835 (internal quotation marks omitted). In determining the
> reasonableness of the government's efforts, courts should consider the
> following: (1) "the more crucial the witness, the greater the effort
> required to secure [her] attendance"; (2) "the more serious the crime
> for which the defendant is being tried, the greater the effort the
> government should put forth to produce the witness at trial"; (3) "the
> defendant's interest in confronting the witness is stronger" in cases
> "where a witness has special reason to favor the prosecution, such as
> an immunity arrangement in exchange for cooperation"; and (4) a
> state should "make the same sort of effort to locate and secure the
> witness for trial that it would have made if it did not have the prior
> testimony available." *Id.* at 835-36.

266 Fed. Appx. at 757, 2008 WL 467015 at *4.  Most recently, the United

States Supreme Court emphasized the deferential standard in this same

context:

> As we observed in *Roberts*, when a witness disappears before trial, it is
> always possible to think of additional steps that the prosecution might
> have taken to secure the witness' presence, *see* 448 U.S., at 75, but

the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising. And, more to the point, the deferential standard of review set out in 28 U.S.C. § 2254(d) does not permit a federal court to overturn a state court's decision on the question of unavailability merely because the federal court identifies additional steps that might have been taken. Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed.

*Hardy v. Cross*, 565 U.S. ___, 2011 WL 6141312 at *4 (Dec. 12, 2011).

The Kansas Court of Appeals summarized the evidence presented on the government's efforts to locate Jones and reached the following conclusions:

At the hearing on the State's motion to declare Jones unavailable as a witness at trial, the State's investigator testified that he received the case on May 1, 2007, and began his efforts to locate Jones on May 15. The investigator had successfully contacted Jones by telephone prior to the March 22 preliminary hearing. Attempts to telephone Jones at three different phone numbers around the middle of May resulted in either no one answering the phone, or the phone numbers had been disconnected.

On May 16, the investigator attempted to serve Jones with a subpoena at Turner's new residence where Jones was supposedly staying. After several unsuccessful attempts at Turner's residence, the investigator discovered that Jones was not living there. The investigator then attempted six different times of the day to locate Jones at another residence, where the investigator was told that Jones and his wife were staying. The investigator testified that, on several of his visits, the lights and a fan were on in the house but no one would answer the door. The investigator confirmed that welfare checks were being sent to that residence. The investigator also determined that Jones had not been incarcerated.

When the investigator was unable to locate Jones by the end of May, he contacted the prosecutor. On May 31, the prosecutor asked an administrative support specialist, Rebecca Keopke, for assistance in locating Jones. Keopke contacted community policing three separate times requesting assistance in locating Jones to testify at trial.

. . . .

9

> In Grant's case, the investigator was never able to find Jones. Grant fails to explain how the investigator could have physically brought Jones to trial when the investigator was never able to find him, or even serve him with a subpoena.
>
>    . . . .
>
> In Grant's case, the State exhausted all of its leads over a couple of weeks in trying to find Jones.
>
> Grant contends that the State's delay in seeking Jones' location until 2 weeks before trial is not due diligence. However, Grant fails to consider Jones' cooperation with the State in the past, which did not indicate that the State would have difficulty in the future. See *[State v.] Cook*, 259 Kan [370] at 383[, 913 P.2d 97 (1996)].
>
> Once the State realized that Jones would not be easy to find, the investigator made several visits to different addresses. While there is no clear indication that Jones was staying at his wife's residence, the circumstances suggest that Jones, who was subject to a pending arrest warrant, might have been evading service of the subpoena. See *State v. Ford*, 210 Kan. 491, 494, 502 P.2d 786 (1972).
>
> K.S.A. 60-459(g)(5) does not require the State to demonstrate that it exhausted every means of locating a witness; the State is required only to demonstrate a good-faith effort and due diligence in locating and presenting the witness. See *[State v.] Zamora*, 263 Kan. [340] at 347[, 949 P.2d 621 (1997)].
>
> Under the circumstances, the district court did not abuse its discretion in concluding that the State had exercised due diligence to locate Jones for trial.

2009 WL 1591396 at *3-*5.  Grant does not challenge this factual statement of the State's efforts.  He complains generally about State's diligence in light of Jones' arrest two months later for failure to pay child support.

Applying the four criteria from *Cook*, Jones was a crucial witness as he was the only one to see Grant start the second fire and to hear some of the inculpatory comments attributed to Grant.  There also is no question that Grant was charged with serious crimes.  Nothing of record exists or is argued by the petitioner to indicate any "special reason" behind Jones'

10

testimony favoring the prosecution.  Finally, the State's efforts are sufficient to be called a diligent, good-faith effort to locate Jones.  The State first used the prior contact numbers that had been successful in locating and securing Jones for the preliminary hearing.  While the State did not maintain contact with Jones after the preliminary hearing, there is nothing of record to indicate the State in good faith was required to do so under the circumstances.  When these initial telephone calls were unsuccessful in locating Jones, the State then tried to serve a subpoena on Jones.  They made as many as ten attempts over a period of four or five days at different times of the day to contact and locate Jones at two different residences. They talked to Jones' friends and relatives in an effort to locate Jones or his wife.  (State Court Rec., Vol. IV, p. 34).  The State's initial delay was reasonable since there was nothing to indicate that Jones would not cooperate as he did at the preliminary hearing.  Once it became apparent that contacting Jones would be an issue, the State reasonably stepped up its efforts with calling other relatives and friends, following different leads, visiting different residences at different times of the day, checking whether the defendant was incarcerated in nearby jurisdictions, and determining the address given for welfare benefits.  *Id.*  Over the course of several weeks, the State had exhausted all of its leads without locating Jones.  Finally, the State made at least three attempts to locate Jones through the Community

11

Policing Department.  Also weighing in favor of the State's efforts is that

Jones was subject to an arrest warrant and may have been evasive with law

enforcement.  *See Malone v. Six*, 298 Fed. Appx. 782, 290, 2008 WL

4788264 at *7 (10th Cir. 2008) (citing *Ewing v. Winans*, 749 F.2d 607, 611-

12 (10th Cir. 1984) and *State v. Ford*, 210 Kan. 491, 502 P.2d 786, 788-91

(1972)).  Under the totality of the circumstances, the State courts' finding

that the prosecution made a diligent, good faith effort is not a decision that

is contrary to, or involves an unreasonable application, of clearly established

federal law as determined by the United States Supreme Court.  Grant's

request for relief on this claim is denied.

**SUFFICIENCY OF EVIDENCE**

The petitioner makes the blanket argument that the State

presented insufficient evidence to prove he committed "aggravated arson,"

as he had "a solid alibi for where . . . [he] was on the date in question" but

"the State would not check . . . [his] alibi."  (Dk. 7, p. 6).  The petitioner

asserts he raised this issue on direct appeal.  The record shows the only

sufficiency of evidence issue stated on direct appeal was that "[t]he State

failed to prove that the fire set in the basement of the house resulted in a

substantial risk of bodily harm; and, therefore there was insufficient

evidence to support Mr. Grant's conviction" and restated that "[t]here was

no evidence presented that the first fire--the basis for the first count of

12

aggravated arson--created a substantial risk of bodily harm." (State Rec., Appellant's Brief, pp. 8, 10). On appeal, the Kansas Court of Appeals found for the defendant on this issue:

> Consequently, Grant's challenge to his conviction on Count I for severity level 3 aggravated arson under K.S.A. 21-3719(a)(1) has merit. However, the lack of evidence for this element of the offense does not support Grant's request to reverse his conviction. . . . Therefore, Grant's sentence for Count I is vacated, and the case is remanded to the district court for resentencing on Count I as a severity level 6 felony.

2009 WL 1591396 at *6. Thus, the defendant prevailed on the only sufficiency of evidence argument he raised on direct appeal. This certainly creates an exhaustion issue, but the State through counsel has expressly waived the exhaustion requirement. 28 U.S.C. § 2254(b)(3). *See Gonzales v. McKune*, 279 F.3d 922, 926 & n.8 (10th Cir.), *cert. denied*, 537 U.S. 838 (2002).

A sufficiency of evidence claim in a federal habeas corpus setting presents "'the relevant question . . . whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Brown v. Sirmons*, 515 F.3d 1072, 1088-89 (10th Cir.) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)), *cert. denied*, 129 S. Ct. 403 (2008). Because of the deference due the trier of fact, review is "sharply limited." *Wright v. West*, 505 U.S. 277, 296 (1992). Without weighing conflicting

evidence or deciding witness credibility, a court "'must accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).

The petitioner's claim does not identify any deficiencies in the prosecution's proof on the different elements to any of the counts of aggravated arson.  Besides claiming he had an "alibi," the petitioner does not offer any details or allegations on it.  The above summary of trial testimony from Jones, Turner and Neal is more than sufficient for a rational trier of fact to find that for each of the three counts that Grant by means of fire damaged a dwelling or property in the dwelling while there was a human being in the dwelling.  *See* K.S.A. 21-3719.  The witnesses, who were inside the house, testified to seeing Grant outside the house at the time of each fire, to recognizing Grant's voice, and to hearing Grant make inculpatory statements at the scene and near the time of the fires.  The state court decisions denying a new trial and affirming the convictions are amply supported by sufficient evidence and are not an unreasonable application of federal law.  The petitioner is denied all relief on this claim.

**CERTIFICATE OF APPEALABILITY**

Rule 11 of the Rules Governing Section 2254 Proceedings requires the district court to "issue or deny a certificate of appealability when

14

it enters a final order adverse to the applicant."  A court issues a certificate "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a constitutional claim is denied on the merits, the petitioner's burden is to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see United States v. Bedford*, 628 F.3d 1232, 1234 (10th Cir. 2010).  The petitioner is unable to show that a reasonable jurist would find the above rulings to be debatable or wrong.  The court therefore denies a certificate of appealability.

IT IS THEREFORE ORDERED that Grant's petitions for federal habeas relief (Dks. 1 and 7) from his state court convictions for aggravated arson pursuant to 28 U.S.C. § 2254 are denied;

IT IS FURTHER ORDERED that this action is dismissed and all relief is denied.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

Dated this 15th day of December, 2011, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge


15